■    In the Matter of SHISEIDO COSMETICS (AMERICA), LTD., et al., Petitioners, v STATE HUMAN RIGHTS APPEAL BOARD et al., Respondents.—Order, State Human Rights Appeal Board, dated February 21, 1979, affirming an order of the State Division of Human Rights dated May 15, 1978, finding, *inter alia,* that petitioners discharged the complainant Joan C. Laufer because of her national origin (American) in violation of Human Rights Law (Executive Law, art 15), and directing her reinstatement, with back pay, is annulled, on the law, as is the order of the State Division of Human Rights, petition is granted, and cross petition for upward modification of back pay

awarded, dismissed, without costs. We fail to perceive in this record substantial evidence that the complainant Joan C. Laufer was dismissed because of her American national origin. Petitioner, Shiseido Cosmetics (America) Ltd. (SCA) a wholly-owned subsidiary of Shiseido Co., Ltd., of Japan, (Shiseido) is a New York corporation engaged in the distribution of Shiseido cosmetics to department stores in the United States and Canada. It is essentially uncontroverted that petitioner, Hisashi Takakura, appointed SCA's president in February of 1975, concluded after an investigation that the company faced significant financial losses in the forthcoming year, and so reported to the parent company. Shiseido directed a major reduction in SCA's sales outlets in the United States and Canada (from 700 to 70 or 80) with equivalent reductions in staff, particularly at the executive level. The then executive vice-president of SCA, Mark Goldsmith, was directed to prepare a plan for the dismissal of employees at the executive level. It was agreed that no new personnel were to be hired to replace those who were dismissed and that their responsibilities were to be assumed by persons already employed by the company. According to Goldsmith and Raymond De Bole, then SCA's comptroller and also involved in the preparation of the plan, Ms. Laufer was terminated in her position as director of national training in accordance with the plan then prepared and her title, though not her duties, was assumed by a Japanese national who had been with Shiseido since 1958. Both Goldsmith and De Bole testified that Ms. Laufer's termination was for business reasons incident to the major retrenchment that was occurring and wholly unrelated to her national origin. Neither was employed by SCA at the time of his testimony and the record discloses no reason to doubt the essential truth of what they said. Ms. Laufer's testimony that she overheard a conversation in which Takakura directed Goldsmith to replace her, although raising a limited question of credibility, does not seem to us substantial evidence, or indeed evidence at all, that she was removed because of her national origin. Nor do we find it significant that the termination of Ms. Laufer and other American employees was not accompanied by comparable dismissal of Japanese employees. It is apparent that the Japanese were in reality employees of the parent corporation assigned to an American subsidiary for varying periods of time as part of a rotation program of a familiar kind. The failure to dismiss such employees does not support the conclusion that a discriminatory policy was being pursued against Americans based on their national origin. We also note that following this program of retrenchment, the reduced staff continues to disclose a significant participation by Americans, some of them in high policy-making positions. Concur—Sandler, J. P., Sullivan, Bloom, Lupiano and Ross, JJ.